**MID-RIDGE INVESTMENT COMPANY,**
Plaintiff-Appellant,

v.

**UNITED STATES of America,**
Defendant-Appellee.

No. 14180.

United States Court of Appeals
Seventh Circuit.

Nov. 18, 1963.

Malcolm K. Whyte, John L. Palmer, Milwaukee, Wis., for plaintiff-appellant Whyte, Hirschboeck, Minahan, Harding & Harland, Milwaukee, Wis., of counsel.

Louis F. Oberdorfer, Asst. Atty. Gen., Carolyn R. Just, Atty., Tax Division, U. S. Department of Justice, Washington, D. C., James B. Brennan, U. S. Atty., Milwaukee, Wis., Meyer Rothwacks, David O. Walter, Martin B. Cowan, Attys. Dept. of Justice, Washington, D. C., for defendant-appellee, Franklyn M. Gimbel, Asst. U. S. Atty., of counsel.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and KILEY, Circuit Judges.

HASTINGS, Chief Judge.

Plaintiff Mid-Ridge Investment Company (Mid-Ridge) filed suit in the district court against the United States pursuant to 28 U.S.C.A. § 1346(a) (1), to recover corporate income taxes alleged to have been erroneously assessed and collected for the years 1953 through 1956.

Mid-Ridge had filed federal corporate income tax returns from 1938 to 1956. On December 17, 1957, Mid-Ridge filed fiduciary returns for the years 1953 through 1956 and claimed a refund for the corporate taxes it had paid in those years. The United States counterclaimed for unpaid corporate income tax deficiencies from 1953 through 1956 which had been assessed against Mid-Ridge.

The district court entered judgment dismissing plaintiff's complaint and for the United States on its counterclaim in the amount of $108,079.86, with interest at six per cent.

From this judgment Mid-Ridge has appealed.

Most of the facts in this case were stipulated by the parties. The facts are fully stated in the well-reasoned opinion of the district court reported at 214 F. Supp. 8 (1962) and reference is now made thereto. The following summary will suffice for the purposes of this opinion.

Mid-Ridge was organized solely for the purpose of acting as trustee for five separate trusts: Hunholz, Miami, Farwell, Ridge and Edwards. These trusts were established under and governed by the laws of Wisconsin.

The assets of the trusts are apartment buildings containing rental units. Hunholz has four apartment buildings and the other trusts each have one.

Each apartment building was constructed prior to 1932 and was financed by the issuance and sale of first mortgage bonds to Wisconsin residents. The trustee for the bondholders of each issue was Dick & Reuteman Company of Milwaukee, Wisconsin.

Due to the depression in 1929, the owners of the buildings defaulted on the bonds. Dick & Reuteman obtained judgments of foreclosure against the properties in the Circuit Court of Milwaukee County, Wisconsin.

Dick & Reuteman submitted to the circuit court a plan of reorganization for each apartment building. These plans were approved by the circuit court and the bondholders.

The earliest plan to be adopted resulted in the formation of the Miami Trust. The history of this formation follows.

On June 5, 1930, Henry Schloegel of Dick & Reuteman was appointed receiver of the mortgaged property. On September 16, 1931, the circuit court entered a judgment of foreclosure and sale.

On December 27, 1933, a bondholders' protective agreement was executed inviting the bondholders of the Miami apartments to deposit their bonds with a committee depositary. The committee was given power to purchase the property and apply all or any of the deposited bonds in payment of the purchase price. The committee was also given the power to become a party to any reorganization of the property.

On June 4, 1935, the mortgaged property was sold at public sale to the bondholders' committee for $50,000. The following day a duly executed sheriff's deed to the property was delivered to the committee.

The circuit court entered its order confirming title in the committee and canceled all bonds and coupons of the Miami Apartments. The court declared that the committee held the property under an express and active trust until the plan of reorganization was effected. Schloegel, the receiver, was discharged.

The reorganization plan became effective on October 2, 1936, when record title was vested in Finance & Investment Company, a corporation controlled by Dick & Reuteman. The plan provided for the issuance of new ten year bonds for the full amount of the old issue of $63,000, to bear interest at five per cent. It provided for the payment of a portion of the delinquent interest and for certificates of delinquent interest to be attached to each $100 bond.

The possession, management and control of the property was vested in H. L. Kadish and Mr. Reuteman, agents of Dick & Reuteman. Dick & Reuteman

was to receive a management fee of six per cent of the gross income and $100 per year as trustee for the bondholders.

The plan provided for the distribution of net income from the trust. To the extent of nine per cent of the mortgage indebtedness still outstanding at the time of distribution, the net income was to be applied to current interest, then to delinquent interest, and finally to reduction of the mortgage indebtedness. One-half of the net income in excess of nine per cent was to be paid to or carried as a credit for the benefit of the registered holders of the first mortgage bonds in proportion to their holdings. The other one-half of the income in excess of nine per cent was to be paid or credited to Finance & Investment Company. In the event of a sale of the Miami property and payment of the bonds, the net profit from the sale was to be credited one-half to the registered holders of first mortgage bonds in proportion to their holdings, and one-half to Finance & Investment Company.

Attached to each $100 bond issued by Finance & Investment Company was a "certificate of contingent interest," which certified ownership in the equity of the property. The holders of these certificates were entitled to receive the proportionate part of one-half the net income in excess of nine per cent of the outstanding indebtedness and a proportionate part of one-half the surplus in the event the building was sold. In later years when bonds were redeemed, the certificates generally remained outstanding.

There was a provision for retiring bonds out of net earnings at par and accrued interest upon giving sixty days notice. Finance & Investment Company could not mortgage the property or otherwise create a lien on it without the consent of a majority of the bondholders. Finance & Investment Company was to be liable to the bondholders only to the extent of the value of the property.

The reorganization plans which led to the creation of the other four trusts were substantially the same as that of the Miami Trust.

Dick & Reuteman decided to set up an entirely new corporation whose sole purpose would be to hold the legal assets of the five trusts. Accordingly Mid-Ridge was formed and the assets of the trusts were conveyed to it. Mid-Ridge was owned by Kadish and Reuteman, as was its predecessor Finance & Investment Company. They also owned Dick & Reuteman.

Dick & Reuteman continued to manage the properties for a fee of six per cent of the gross income, plus $100 per year, as trustee for the bondholders.

The bonds were extended at the end of the first ten year period for another ten year period. During the years, Mid-Ridge was able to gradually redeem the bonds and pay the delinquent interest. When a bond was redeemed the certificate of contingent interest was detached from the bond, registered in the name of the bondholder and it became marketable. The evidence shows that there were sales of the certificates after the bonds had been redeemed. The last delinquent interest was paid in 1948.

By June 6, 1961, the amount of bonds outstanding in each trust was reduced substantially and in the Edwards Trust all the bonds had been paid. The former bondholders of the Edwards Trust retained their certificates of contingent interest and have continued to receive 50% of the profits derived from the operation of the apartment building.

From the beginning of the trust operations, there have been no changes in the terms of the trust instruments.

In 1943, the District Director ruled that the certificates of contingent interest were not subject to the documentary stamp taxes imposed on capital stock issued by corporations.

In its federal corporate income tax returns filed from 1938 to 1956, Mid-Ridge reported as income the 50% distribution it received under the respective trust agreements as beneficiary. It also reported as its own income the amounts

credited to bondholders but retained as reserves not otherwise paid to them.

However, on advice of counsel, Mid-Ridge filed fiduciary returns for the years 1953 through 1956 on December 17, 1957. On these fiduciary returns Mid-Ridge deducted amounts paid to bondholders and all amounts credited or paid to itself as beneficiary, reporting as net taxable income the balance credited but not paid to the bondholders. At the same time, Mid-Ridge filed claims for refund of the corporation income taxes it had paid for the years 1953 through 1956.

The basis of its claims for refund was the same as Mid-Ridge reflected in its belated fiduciary returns. It claimed that it had improperly charged itself on its own returns with income it had received as a distribution to a beneficiary in its fiduciary capacity.

The claims for refund were rejected by the Commissioner of Internal Revenue. Mid-Ridge filed this action to recover the alleged overpayments on April 21, 1959.

On November 18, 1960, five separate statutory notices of deficiency, each based on the Government's contention that the trusts were associations taxable as corporations, were mailed to Mid-Ridge as trustee of the five trusts involved. Mid-Ridge chose not to file a petition for review with the United States Tax Court.

The case was finally put at issue on the Government's amended answer and its counterclaim for the deficiencies set forth in the statutory notices.

The district court stated that the only issue before it was whether the five trusts involved were associations taxable as corporations. On this question, it found in favor of the Government and entered the judgment appealed from.

The parties agree that the material facts as stipulated and as found by the district court are not in dispute.

They also agree that the district court correctly stated that the determination of whether the five trusts are associations taxable as corporations is to be decided by the criteria set forth by the Supreme Court in Morrissey v. Commissioner, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263 (1935).

Mid-Ridge contends on this appeal that the district court misapplied these tests in Morrissey to the facts found in the instant case, and erred as a matter of law in reaching its final conclusion.

The applicable provision of the Internal Revenue Code of 1939, 26 U.S.C.A. § 3797 (1952 ed.) provides:

"§ 3797. Definitions

"(a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof—

\* \* \* \* \* \*

(3) Corporation. The term 'corporation' includes associations, joint-stock companies, and insurance companies."

The above provision, which is applicable to 1953, is identical to § 7701(a) (3) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 7701(a) (3) (1954 ed.), and applies to the years 1954, 1955 and 1956. See, also, Treasury Regulations 118 (1939 Code), § 39.3797–2 and § 39.3797–3.

It was held in Morrissey v. Commissioner, supra, that a trust created and maintained as a medium for carrying on a joint business enterprise and sharing its gains is to be classed as an association within the meaning of the Internal Revenue Code if it has sufficient corporate attributes to make it resemble a corporation.

The district court found that, in form, each of the trusts in controversy had the following corporate attributes set forth in Morrissey, which in turn considered applicable Treasury Regulations:

"Those attributes are: (a) Title to the property embarked in the enterprise is held in trust by trustee as a continuing body during the existence of the trust; (b) Centralized management by trustees either named in the trust instrument with power to select successors or selected by

or with the advice of those beneficially interested in the enterprise; (c) An enterprise secure from termination of interruption by the death of the owners; (d) Means of transfer of the beneficial interests without affecting the continuity of the enterprise; (e) Limitation of personal liability of the participants to the property embarked in the undertaking." 214 F.Supp. 8, at 15.

The district court then concluded "that the attributes named are those which distinguish an association from a partnership. And it is clear from the facts in the instant case that the trusts here involved possess these characteristics." Id. 214 F.Supp. at 15.

Mid-Ridge contends that the five trusts were created and administered to hold and conserve the original trust corpus (eight apartment buildings) and were not created or used as a medium for the conduct of business and sharing its gains, and that they lie outside the controlling factors laid down in Morrissey. We disagree.

We quote from the findings of the district court:

"Title to the property is held in trust by the plaintiff corporation, Mid-Ridge Investment Company, which is a continuing body. The management of the property is centralized in Dick & Reuteman Co. which has managed the properties since the creation of the trusts by virtue of the original trust instruments. The trusts have been in existence for over twenty years and are not terminable by the death of any of the beneficiaries. The beneficial interests represented by the certificates of contingent or beneficial interest are transferable, and, in fact, there have been transfers of some of them, and finally, the trust instrument limits the liability of the participants to the property embarked in the undertaking.

"However, under the ruling in the Morrissey case not all trusts possessing the attributes of a corporation are taxable as an association. The essential feature of the undertaking is that it be created and maintained as a medium for the carrying on of a business enterprise and the sharing of its gains. Plaintiff contends that the trusts in question were clearly created and operated to hold and conserve specific properties for the benefit of the trust beneficiaries with no possibility that the trusts would conduct any active business.

"It is our opinion that a fair appraisal of the facts heretofore set forth does not sustain this position. Although the trusts were formed as a result of foreclosure actions against certain apartment buildings by the trustee of a bondholders' committee—the reorganization plans finally adopted contemplated more than a trust arrangement to recover an investment which would otherwise be lost. The trustee for the bondholders, Dick & Reuteman Co. and the trustee corporation, Mid-Ridge Investment Company, have an identity of ownership. Plaintiff, Mid-Ridge, was given a 50% equity and the bondholders the other 50% equity in any future profits derived from the venture. The fact that the certificates of beneficial and contingent interest were of little or no value at the time of the formation of the trusts does not change the character of the venture. As a result of an improved economic climate, astute and competent management of the apartment buildings, the certificates of beneficial or contingent interest have become valuable and the holders thereof are participating in the profits of the venture.

"The record shows that Mr. Kadish and Mr. Reuteman, owners of both Dick & Reuteman and Mid-Ridge Investment Company, expended considerable effort in conducting the business affairs of the trusts. The physical maintenance of the buildings, the rental of the apart-

ment units, the hiring of the janitor, contracting for repairs, collection of rents, are all incident to the business of operating an apartment house. In addition, Mr. Kadish testified that he had many 'top management' problems in handling the trust, including negotiations with the Building Inspector, the Industrial Commission, as well as efforts to improve rental income by securing legislative changes in the rental control laws following World War II." 214 F.Supp. at 15–16.

We have carefully reviewed the facts as found and have considered the criteria applicable thereto as set out in Morrissey and the applicable regulations. Chief Judge Tehan, in his thoughtful opinion, has made a fair appraisal of the facts. We have concluded that his application of Morrissey to the facts was sound and must be sustained. We agree with the conclusion that "[t]he facts impel the conclusion that the trusts here involved are a medium for conducting a business for the purposes of sharing the gains therefrom." 214 F.Supp. at 16.

With the advent of an improving economic climate and as a result of efficient management of the trust properties, the owners of the beneficial interest therein find themselves vested with a profitable enterprise. It is now being operated for profit and in case of the Edwards Trust, entirely for profit. It has been and now is far more than a nominal care-taking arrangement. The activities that have gone into the conduct of the business of the trusts have the characteristics of a business enterprise.

Mid-Ridge, after having filed its income tax returns on a corporate basis from 1938 to 1956, comes into the picture a little late in 1957 when it seeks to reconstruct this venture on a fiduciary basis and disavow the experience of 28 years in the light of a successful business venture.

We have considered other contentions advanced by Mid-Ridge and find them unpersuasive.

Our own independent judgment, reinforced by the opinion of the district court, leads us to hold that the district court did not err as a matter of law in concluding that the five trusts were associations taxable as corporations and in rendering judgment accordingly.

The judgment of the district court is in all respects affirmed.

Affirmed.